IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

DAVID WOOLSEY,

                       Plaintiff,

v.                                             CIVIL ACTION NO. 2:18-cv-00745

RICHARD OJEDA,

                       Defendant.

**MEMORANDUM OPINION AND ORDER**

Before this Court is Defendant Richard Ojeda's ("Defendant") Motion to Dismiss. (ECF No. 6.) For the reasons explained more fully herein, Defendant's motion is **DENIED**.

*I.    BACKGROUND*

Plaintiff David Woolsey ("Plaintiff") brought this action pursuant to 42 U.S.C. § 1983, alleging that Defendant violated Plaintiff's First Amendment rights by taking actions that led to the termination of Plaintiff's employment. (*See* ECF No. 1.) Plaintiff alleges that on April 20, 2018, while riding in the passenger seat of a vehicle owned by his employer, he filmed a video that criticized Defendant's driving and posted it on his own personal Facebook profile. (*Id.* at 2–6.) Defendant, who was a sitting state senator and a candidate for United States Congress at the time, posted a response video later that night to his official "OjedaForCongress" Facebook page. (*Id.* at 6–10.) In the video, Defendant berated Plaintiff for supporting an opposing candidate in a previous race and called on Plaintiff's employer to fire Plaintiff for driving recklessly in a company

1

vehicle. (*Id.* at 6–7.) Plaintiff further alleges that on April 21, 2018, Defendant called Plaintiff's employer and spoke with the owner. (*Id.* at 10.) The following Monday morning, April 23, 2018, the owner fired Plaintiff and stated that Plaintiff "shouldn't have posted the video" because he was "interfering in a federal election." (*Id.*)

Plaintiff filed this action shortly thereafter. On June 4, 2018, Defendant filed his motion to dismiss. (ECF No. 6.) Plaintiff filed a timely response on June 14, 2018. (ECF No. 7.) Defendant filed a timely reply on June 21, 2018. (ECF No. 8.) As such, this matter is fully briefed and ripe for adjudication.

## II. LEGAL STANDARD

In general, a pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015) (stating that this requirement exists "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))). However, to withstand a motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must plead enough facts "to state a claim to relief that is plausible on its face." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Stated another way, the factual allegations in the complaint "must be sufficient 'to raise a right to relief above the speculative level.'" *Woods v. City of Greensboro*, 855 F.3d 639, 647 (4th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555). A complaint that alleges enough facts "to satisfy the elements of a cause of action created by [the relevant] statute" will

2

survive a motion to dismiss. *Id.* at 648 (quoting *McCleary-Evans*, 780 F.3d at 585).

In evaluating the sufficiency of a complaint, this Court first "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. This Court then "assume[s] the[] veracity" of the complaint's "well-pleaded factual allegations" and "determine[s] whether they plausibly give rise to an entitlement to relief." *Id.* Review of the complaint is "a context-specific task that requires [this Court] to draw on its judicial experience and common sense." *Id.* "[T]o satisfy the plausibility standard, a plaintiff is not required to plead factual allegations in great detail, but the allegations must contain sufficient factual heft to allow a court, drawing on judicial experience and common sense, to infer more than the mere possibility of that which is alleged." *Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 452 (4th Cir. 2017) (internal quotation marks omitted).

## III.  DISCUSSION

### A. "Acting Under Color of State Law"

Defendant argues that Plaintiff fails to state a claim under 42 U.S.C. § 1983 because Defendant acted in his personal capacity, not in his capacity as a state senator, when posting the video to his Facebook page. (ECF No. 6 at 15–17.) To state a claim under § 1983, the complaint must plead specific facts demonstrating a violation of the plaintiff's constitutional rights that was committed by an individual "acting under color of state law." *Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011) ("A federal civil rights claim based upon § 1983 has two essential elements: '[A] plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.'" (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988))). The defendant acts under color of state law if he is "a state actor or ha[s] a sufficiently close relationship with state

3

actors such that . . . [he] is engaged in the state's actions." *Cox v. Duke Energy Inc.*, 876 F.3d 625, 632 (4th Cir. 2017) (quoting *DeBauche v. Trani*, 191 F.3d 499, 506 (4th Cir. 1999)). Put simply, the defendant acts under color of state law when he "exercise[s] power possessed by virtue of state law and made possible only because [he] is clothed with the authority of state law." *Davison v. Randall*, 912 F.3d 666, 679 (4th Cir. 2019) (internal quotation marks omitted).

Of particular relevance to this case, § 1983 "includes within its scope apparently private actions which have a 'sufficiently close nexus' with the State to be 'fairly treated as that of the State itself.'" *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). In determining "whether [a private party's] allegedly unconstitutional conduct is fairly attributable to the State," this Court first "identif[ies] the specific conduct of which the plaintiff complains." *Mentavlos v. Anderson*, 249 F.3d 301, 311 (4th Cir. 2001) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50, 51 (1999)). This Court then evaluates whether that conduct may reasonably "be treated as that of the State itself." *Rossignol*, 316 F.3d at 523; *Mentavlos*, 249 F.3d at 311. "[T]here is no specific formula for defining state action under this standard." *Rossignol*, 316 F.3d at 523 (internal quotation marks omitted). Rather, this Court evaluates "the totality of the circumstances." *Holly v. Scott*, 434 F.3d 287, 292 (4th Cir. 2006) (internal quotation marks omitted); *Rossignol*, 316 F.3d at 523 n.1 ("In the course of its state action inquiries, the Supreme Court has not opted for an objective or subjective test, but simply for a look at the totality of circumstances that might bear on the question of the nexus between the challenged action and the state."). "If a defendant's purportedly private actions are linked to events which rose out of his official status, the nexus between the two can play a role in establishing that he acted under color of state law." *Rossignol*, 316 F.3d at 524. In addition, "[w]here the sole intention of a public official is to suppress speech critical of his conduct

4

of official duties or fitness for public office, his actions are more fairly attributable to the state." *Id.*

The Fourth Circuit's recent decision in *Davison* is instructive here. The defendant in *Davison* was a county politician who communicated with her constituents through an official Facebook page bearing her name. 912 F.3d at 673. She encouraged her constituents to use the Facebook page or her county government email address to converse with her about issues facing the county. *Id.* The plaintiff in *Davison*, "an outspoken resident" who was active in county politics, posted negative comments to the page. *Id.* at 675. The defendant deleted the comments and blocked plaintiff's account from the page for twelve hours. *Id.* at 675–76. Plaintiff sued, arguing a violation of his First Amendment rights. *Id.* at 676.

The Fourth Circuit held that the defendant acted under color of state law in administering her Facebook page and in banning the plaintiff from it. *See id.* at 681. The court explained that the defendant used the page "to further her duties as a municipal official" to "provide[] information to the public about her . . . official activities and solicit[] input from the public on policy issues." *Id.* at 680. The court further emphasized that the page was "categorized as that of a government official," identified the defendant according to her official title, and provided an official email address in the contact information. *Id.* at 680–81. The court concluded, "A private citizen could not have created and used the Chair's Facebook Page in such a manner." *Id.* at 681. The court also noted that "the specific actions giving rise to [the plaintiff's] claim . . . are linked to events which arose out of h[er] official status." *Id.* (internal quotation marks omitted).

In this case, Plaintiff alleges that Defendant posted the response video on his "OjedaForCongress" Facebook page, "over which he exerts plenary control" and which he uses "as his official Facebook account, both as a member of the West Virginia Senate[] and as a

5

candidate for [United States Congress]." (ECF No. 1 at 13.) Plaintiff further alleges that Defendant, like the defendant in *Davison*, uses his official Facebook page "to share information with his constituents, as well as for campaign purposes." (*Id.*) Defendant "discusses political issues . . . and invites discussion from members of the public," as well as "promot[ing] and invit[ing] attendance at events related to [Defendant's] work as a senator." (*Id.*) He signs posts with "WV Sen. Richard Ojeda" and posts videos "from the floor of the legislature." (*Id.*) These allegations suggest that the "OjedaForCongress" Facebook page, like the page at issue in *Davison*, is an official Facebook page maintained by a government actor.

Plaintiff alleges that in the response video, Defendant accused Plaintiff of driving erratically in the company vehicle and stated that Plaintiff was "mad at me because I beat his person in the last political race." (*Id.* at 6–7.) Defendant also mentioned Plaintiff's employer, stating that he "hope[s] the people that are running [the company employing Plaintiff] . . . sees [sic] this video" and claiming that he is "gonna go to [the company] and I'm gonna let them know point blank . . . that [Plaintiff's driving] is unacceptable." (*Id.* at 7.) Defendant posted this video not to his personal Facebook account, but to his official Facebook page with more than 50,000 followers. (*Id.* at 6, 14.) Many of these followers are Defendant's constituents, with whom he communicates regularly via the page. (*See id.* at 13.) In fact, Plaintiff's employer "has been in business in [Defendant's] district for 70 years[] and did not want to suffer retaliation and economic harm due to Plaintiff's political expression." (*Id.* at 15.) Plaintiff further alleges that the day after the incident, Defendant spoke with the owner of the store that employed Plaintiff, and that Plaintiff was fired on the following business day. (*Id.* at 10.) When Plaintiff was fired, his employer told him that he was "interfering in a federal election." (*Id.*) These facts, which this Court must accept as true in ruling on Defendant's motion to dismiss, support an inference that

6

Defendant used his position as a state senator to pressure Plaintiff's employer to fire Plaintiff. *See Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (explaining that in ruling on a motion to dismiss, this Court "must assume all [well-pled facts] to be true" and "draw all reasonable inferences in favor of the plaintiff").

In sum, under the facts pled in Plaintiff's complaint, the totality of the circumstances points to a conclusion that Defendant acted under color of state law in both posting the response video to his official Facebook page and making a phone call to Plaintiff's employer in an effort to have Plaintiff fired. Defendant's motion to dismiss the complaint on this basis is therefore **DENIED**.

### B. *First Amendment Violation*

Defendant also contends that Plaintiff fails to plead a First Amendment retaliation claim because the complaint does not allege threats or coercion by the government or describe the conversation between Defendant and Plaintiff's employer. To make out a § 1983 First Amendment retaliation claim, "a plaintiff must allege that (1) he engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct." *Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017) (alterations and internal quotation marks omitted). Defendant's challenge to the complaint goes to the second and third elements. (*See* ECF No. 6 at 11–14; ECF No. 8.)

With respect to the second element, Plaintiff has adequately pled an adverse effect on his First Amendment rights. "Determining whether a plaintiff's First Amendment rights were adversely affected by retaliatory conduct is a fact intensive inquiry that focuses on the status of the speaker, the status of the retaliator, the relationship between the speaker and the retaliator, and the nature of the retaliatory acts." *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 686 (4th Cir. 2000).

7

Generally, "a plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter 'a person of ordinary firmness' from the exercise of First Amendment rights." *Martin*, 858 F.3d at 249. However, where, as here, "a public official's alleged retaliation is in the nature of speech, in the absence of a threat, coercion, or intimidation intimating that punishment, sanction, or adverse regulatory action will imminently follow, such speech does not adversely affect a citizen's First Amendment rights, even if defamatory." *Suarez Corp.*, 202 F.3d at 687.[1] Such coercion is present in the facts of this case.

Defendant's statements about Plaintiff's employer "can reasonably be interpreted as intimating that [Defendant] would punish, sanction, or take an adverse action against" Plaintiff or "utilize [his] government power to silence" Plaintiff. *Id.* at 689. Plaintiff alleges that Defendant threatened in the response video to "go to [Plaintiff's employer] and . . . let them know point blank . . . that [Plaintiff's driving] is unacceptable." (ECF No. 1 at 7.) Plaintiff further alleges that Defendant did indeed contact Plaintiff's employer and that Plaintiff was fired when he arrived at work the next business day after the phone call. (*Id.* at 10.) When firing Plaintiff, the owner told Plaintiff that Plaintiff "shouldn't have posted the video" because he was "interfering in a federal election." (*Id.*) This alleged stated reason for firing Plaintiff implies that Defendant did not allow Plaintiff's employer "to determine its own course of action," *Suarez Corp.*, 202 F.3d at 689, because Plaintiff's employer "has been in business in [Defendant's] district for 70 years[] and did not want to suffer retaliation and economic harm due to Plaintiff's political expression," (ECF No.

---

[1] Plaintiff argues that he is not required to plead "a threat, coercion, or intimidation," *Suarez Corp.*, 202 F.3d at 687, because Defendant's response video and phone call concerned "private information" about Plaintiff. (*See* ECF No. 7 at 17–19.) However, the "private information" exception applies when "the resulting injury caused by the disclosure of the information in retaliation for engaging in protected conduct is . . . embarrassing, humiliating, or emotionally distressful." *Suarez Corp.*, 202 F.3d at 688. Complaints about an individual's driving do not reach that threshold.

8

1 at 15). Taken together, these facts are sufficient to establish an adverse effect on Plaintiff's First Amendment rights at the motion to dismiss stage.

Plaintiff has also adequately pled a causal relationship between the response video, Defendant's telephone call to Plaintiff's employer, and Plaintiff's termination. Defendant argues that Plaintiff's failure to plead any facts about the content of the phone call between Defendant and Plaintiff's employer is fatal to Plaintiff's claim. (ECF No. 6 at 14; ECF No. 8 at 4–5.) However, Plaintiff alleges that Defendant threatened to contact Plaintiff's employer in the response video posted to Defendant's official Facebook page, that Defendant did in fact contact Plaintiff's employer the following day, and that Plaintiff was fired on the first business day after the phone call. (ECF No. 1 at 7, 10.) Given this alleged course of events, this Court need not speculate about the conversation between Defendant and Plaintiff's employer to understand what Plaintiff alleges Defendant said during the call.

Plaintiff further alleges that his employer "has been in business in [Defendant's] district for 70 years[] and did not want to suffer retaliation and economic harm due to Plaintiff's political expression," (*id.* at 15), and that Plaintiff's employer mentioned the video Plaintiff posted and the "federal election" in which Defendant was a candidate when firing Plaintiff, (*id.* at 10). Accepting these facts as true and construing all reasonable inferences in Plaintiff's favor, as this Court must do in ruling on the motion to dismiss, *see Nemet Chevrolet*, 591 F.3d at 253, Plaintiff has demonstrated that in response to the video Plaintiff posted, Defendant contacted Plaintiff's employer in order to pressure the owner to fire Plaintiff. Accordingly, Plaintiff has adequately pled a First Amendment violation, and Defendant's motion to dismiss the complaint on this basis is **DENIED**.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss, (ECF No. 6), is **DENIED**.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: January 30, 2019

_____
THOMAS E. JOHNSTON, CHIEF JUDGE